STACY, C.J., and WINBORNE, J., took no part in the consideration or decision of this case.
This case was here on appeal at the Spring Term, 1945, of the Court, and the result is reported in 225 N.C. at page 293, 34 S.E.2d 430. The statement of the case in that report covers the essential facts involved in the present appeal, and the full opinion of the Court is so related to the subsequent procedure and the scope of this review that both the statement of the case and the full opinion are referred to as a part of this statement. Matters occurring since the opinion was handed down are further noted.
On the former trial the plaintiff, amongst other demands, sought relief on equitable grounds, asking that it be recompensed or that restitution be made to it with respect to money used by the defendant on an attempted assumption of debt thereafter declared to be void. In reviewing the judgment this Court, speaking through Mr. Justice Winborne, said:
"It is apparent from the language of the judgment below that the court, in arriving at the decision made, applied the equitable principle of restitution. However, upon the face of the factual situation in hand, we are of opinion and hold that plaintiff may not, at this time, invoke the aid of a court of equity for application of that principle, since it appears that plaintiff is not without an adequate remedy at law. Equity will not lend its aid in any case where the party seeking it has a full and complete remedy at law. Town of Zebulon v. Dawson, 216 N.C. 520,5 S.E.2d 535; In re Estate of Daniel, ante (225 N.C.), 18."
The remedy at law pointed out by the Court was the enforcement of the C. Clair Conner note and deed of trust securing it as the individual act of Conner. The opinion proceeds:
". . . Moreover, the deed, the note and the deed of trust are clear and unambiguous, and there is in neither any expression tending to show agency or from which agency may be inferred. Under such circumstances, so long as the deed, the note and the deed of trust remain as they *Page 443 
now are, a trusteeship may not be read into the note and into the deed of trust.
"See Restatement of the Law of Agency, section 325, 1 Mechem on Agency (2 Ed.), section 1405, et seq., particularly sections 1420 and 1425. Also,Bryson v. Lucas, 84 N.C. 680; Hicks v. Kenan, 139 N.C. 337,51 S.E. 941; Basnight v. Jobbing Co., 148 N.C. 350, 62 S.E. 420.
"Thus, until or unless there be a reformation of the deed, the note and the deed of trust, the legal remedy of foreclosure under the terms of the deed of trust or by civil action would seem to be available to plaintiff.
"And so far as the rights of Guilford County in and to the Bradshaw property are concerned, it holds a deed from C. Clair Conner which is made expressly subject to the deed of trust securing the note which plaintiff holds."
The Court held that the provision in the deed of Conner to Guilford County, in which the county undertook to assume and pay the indebtedness to plaintiff, secured by the deed of trust, was not enforceable as an express contract, referring to Article VII, sec. 7, and Article V, sec. 4, of the Constitution. Article VII, sec. 7, of the Constitution forbids the creation of debt other than for a necessary purpose without authorization by popular vote; Article V, sec. 4, prohibits counties from contracting debt during any fiscal year to an amount exceeding two-thirds of the amount by which the outstanding indebtedness of the county shall have been reduced during the preceding fiscal year, without an approving vote of the people. The project had not been declared a necessary purpose; and the debt of Guilford County had not been reduced at all during the preceding fiscal year.
After the opinion and decision in Insurance Co. v. Guilford County,supra, were filed in the lower court, the case was formally reconstituted in so far as became necessary to meet the suggestion of the appellate Court respecting the remedy and the defense, and readied for trial. The plaintiff brought in as defendants C. Clair Conner, grantee in the Bradshaw deed and subsequent encumbrancer in the trust deed, and Julian Price, Trustee therein. Appropriate amendments were made to the pleadings, the plaintiff seeking its remedy of foreclosure against Conner under the trust deed, the defendant Guilford County opposing, and seeking to have the Bradshaw deed to Conner, the trust deed of Conner to Price, and the deed of Conner and wife to Guilford County, each reformed in the particulars stated infra. The defendant county sought to reform the Bradshaw deed to Conner by striking out in the premises "C. Clair Conner, unmarried," and inserting in lieu thereof, "to Guilford County, party of the second part"; to have the deed of trust executed to Julian Price and the note purporting to be secured thereby reformed so *Page 444 
as to read "C. Clair Conner, Agent for Guilford County" wherever the signature appears in said deed of trust and note, and thereupon to have the deed of trust and note canceled and annulled; to have the deed of Conner and wife to Guilford County reformed by striking out the clause making it subject to the Jefferson Standard Life Insurance Company debt and deed of trust. The right to reformation in all these respects is grounded upon the allegation of fraud and conspiracy of former members of the County Board of Commissioners, C. Clair Conner and representatives of the plaintiff to cause a debt to be created against Guilford County in violation of the constitutional prohibitions recited and in contravention of public policy. The allegations of fraud are based on the agreement evidenced by resolution of the Board of County Commissioners on 16 November, 1936 (appearing in full in Ins. Co. v. Guilford County, supra, on page 297), and upon the acts of the several parties named in pursuance thereof, culminating in the execution of the above instruments, all of which are included in the stipulations of fact in the case now under review.
As on the former trial, the controversy was submitted to the trial judge by consent without the intervention of a jury, on a stipulation of fact as above noted.
Upon the stipulated facts, the appellant asked the court below to find that the whole plan set forth in the stipulation of fact had for its end and purpose the nullification of the statutes and Constitution of North Carolina relative to the incurrence of debt by counties; that it was an attempt to create a debt by Guilford County on property acquired by it for governmental purposes, and that the deed of trust and note executed in connection with it were against public policy, and that the plaintiff seeks the aid of equity in defeating constitutional and statutory provisions, and therefore has no standing in a court of equity; that the erection of the county building in High Point was not a necessary expense within the meaning of the North Carolina Constitution, Article VII, sec. 7; that at the time the loan was attempted to be made Guilford County was prohibited by the Constitution, Article V, sec. 4, from incurring any debt. "That the substance and object of the plan and scheme shown in said Stipulation of Facts, being contrary to public policy, the form of said plan and scheme should be disregarded and the matter treated as it really was, i.e., the purported or attempted loan of money by the plaintiff to Guilford County; and the purchase of the Bradshaw property therewith, the county using moneys from its general funds to contribute thereto; and an attempt by the then Commissioners of Guilford County to execute a note and a deed of trust upon said property, through an agent, C. Clair Conner." Further conclusions of law asked for by the defendant county are: "That the plaintiff is not entitled to *Page 445 
recover upon a quantum meruit or implied contract." "That the defendant is not estopped to deny that it owes the alleged debt." Defendant then tendered a judgment providing for the reformation of the instruments in the respects requested and denying foreclosure, which the court declined to render.
At the conclusion of the hearing and argument the trial judge found the facts to be as stipulated, and further that in all the transactions involved the parties thereto had acted in good faith.
Among pertinent conclusions of law are the following:
"The note dated December 1, 1936, in the original amount of $100,000, executed by C. Clair Conner and payable to the order of Jefferson Standard Life Insurance Company is valid, and in all respects a legal, binding and enforceable obligation; that there is now justly due, owing and unpaid, upon said note the sum of $79,674.45 with interest thereon at the rate of 4% per annum, payable semi-annually from and after June 1, 1941; and that the Jefferson Standard Life Insurance Company is the lawful owner and holder of said note.
"The deed of trust dated December 1, 1936, from C. Clair Conner to Julian Price, Trustee, given as security for the payment of the aforesaid note, and recorded in the Office of the Register of Deeds of Guilford County in Book 797, at page 211, is, in all respects, legal and valid, and is a first and prior lien upon the property therein described.
"The defendant, Guilford County is not entitled to have said note and deed of trust, or the deed from Mrs. Sallie Bradshaw to C. Clair Conner, reformed as alleged in said defendant's answer.
"The Board of County Commissioners of Guilford County, in meeting duly assembled on July 23, 1945, having adopted a resolution declaring that the acquisition of the Bradshaw land and the Public County Building erected thereon in the City of High Point, described in the aforesaid deed of trust to Julian Price, Trustee, a necessary governmental expense of Guilford County, and that it is necessary to have said County Building in the City of High Point, the Court is of the opinion and so holds, that the purchase of the Bradshaw property and the erection of the County Public Building thereon in the City of High Point were and are necessary expenses of Guilford County."
In conformity with these conclusions, the court entered judgment for the amount due on Conner's note, decreed foreclosure, and adjudged that any surplus arising from the sale be paid to the County of Guilford.
The defendant county appealed.
The decision on the former appeal, Insurance Co. v. Guilford County,225 N.C. 293, 34 S.E.2d 430, which became, and continues to be, the law of the case has so narrowed the controversy that the scope of this review is properly confined and directed to the action of the trial court in denying the reformation of the several deeds to the Bradshaw property and the validity and propriety of the ensuing judgment decreeing foreclosure.
The crux of the case as here presented may be summarily stated: The court below found as a fact that all the parties to the various transactions alleged to be fraudulent acted in good faith, declined to decree reformation as demanded, and ordered foreclosure. The appellant insists that the conduct of the parties constituted at least legal fraud, regardless of the question of good faith, entitling it to the relief demanded; and that the court had no alternative on the facts to find otherwise or to refuse a positive finding to that effect, and thereupon to reform the instruments as demanded and deny foreclosure.
Legal fraud does not necessarily involve the conscience or moral dereliction, but may in instances where it is recognized as actionable serve as the basis of appropriate relief. 33 Am. Jur., p. 756, sec. 4. If the trial court was wrong in assuming that the acts of which defendant complained did not constitute such fraud, the finding that they were done in good faith might be inconclusive.
A precise definition of legal fraud, serviceable on all occasions, has not so far been formulated. Its characteristics must be gathered from the several individual instances and situations in which it has been predicated as a matter of public policy, most often applied to some breach of duty in a fiduciary relationship. 37 C.J.S., pp. 211-213, sec. 2 (c) (2). There are so many of the elements of constructive fraud absent in the whole complex of incidents brought into the evidence that we are of opinion they do not constitute either moral or legal fraud. However this may be, legal fraud, to be actionable, must include fraud in the defendant and damage to the plaintiff — using the terms "plaintiff" and "defendant" as causes are usually constituted. Some right of the party seeking relief must have been injuriously affected by the fraud or some inequitable advantage taken; 37 C.J.S., p. 215, sec. 3; Brooks v. Greenville Banking Trust Co.,206 N.C. 436, 174 S.E. 29; and there must be some causal connection between the fraud and the injury alleged, and some relevancy between them and the relief demanded. The Court would not undertake, on grounds of fraud, to reform an instrument executed between strangers, except to establish some right of the petitioner which has been defeated or injuriously affected by the fraud.
In the case at bar, the appealing defendant had no property or property right in the Bradshaw property unless it acquired that right through *Page 447 
the agency of Conner, and to assert that agency would be to ratify the fraud it has successfully denounced, or, to put it in terms more consonant with the facts, an agency it had no capacity to create.
The defendant had no connection with the Bradshaw purchase except through Conner. He was commissioned to buy the property with money borrowed from plaintiff on the credit of defendant, and purportedly did so. The character of that transaction cannot now be changed by nunc pro tunc
amendment to read into it an innocent purchase by the county out of surplus funds available for the purpose. The county, on the facts of record, did not contribute anything to the purchase, although it repaid a part of the loan made by plaintiff to Conner and spent a considerable sum of money in completing the building and improvements on the property. If defendant has any right of redress for these expenditures, it must take some other form. They cannot be confused with the purchase price paid for the property, nor by legal fiction imported into that transaction so as to make the agency lawful or invoke its aid in the attempt to establish a trust with respect to any money contributed to the purchase. The transaction, as far as the attempted participation of the county therein is concerned, was violative of two unyielding prohibitions of the Constitution, as well as a body of statute law, and the result, as affecting the county, is void.
Even if fraud should be found in the several transactions contemplated in the plan of financing adopted, it does not necessarily follow that defendant was thereby brought into position to avail itself of the fraud in the peculiar manner proposed, or to demand the suggested relief. Assuming, contrary to our opinion, that the conduct of all parties to the transactions was fraudulent, what is the grievance of the county, and what may it equitably demand? The fruits of the fraud? Or, rather, to be removed from its atmosphere unhurt?
Guilford County retains its corporate entity, or perhaps we should say has a continuing identity throughout all the changes in personnel of its governing boards. The responsibility of its officers to the county for dereliction of duty is one thing, and the liability of the county for its dealings with others is quite another. In the latter relation it is held to the same rules of equitable dealing that apply to all persons, natural or corporate, in so far as that may be done while respecting its municipal character and the laws regulating its business and commercial transactions. In its cross action for equitable relief these rules must be observed. The maxim that he who seeks equity must do equity is not a precept for moral observance, but an enforceable rule of law. Pomeroy, Equity Jurisdiction, Vol. 2, sec. 385, p. 51, et seq.; Hairston v. Keswick Corp., 214 N.C. 678,200 S.E. 384. We are not addressing this *Page 448 
observation to the question of restitution — which the judgment under review has eliminated from the authorized procedure. We refer to the objective defendant seeks to reach through reformation of the several deeds.
The allegations of fraud upon which defendant seeks reformation serve to clothe all the incidents to which they refer in the same sheath of iniquity. The outstanding transactions denounced as fraudulent and conspiratorial are all peas in the same pod. But the scheme of reformation would (a) reform and cancel the deed of trust to Jefferson Standard Life Ins. Co.; (b) strike out the condition of encumbrance in Conner's deed to the county; (c) substitute the county for Conner as grantee in the Bradshaw deed on the strength of his agency and a contribution by the county to the purchase out of surplus funds; all converging to put the title in the county to a valuable property now used by it, and hereafter to be used, for the most necessary purposes of local and county government without, it is insisted, any obligation to pay for it or any forum in which redress may be sought. Certainly there is no rule of equity which privileges one who seeks equity on grounds of fraud to strike down only those transactions which are unfavorable to him and preserve from a like fate those from which he would take an advantage, although equally obnoxious to the law, thus blowing hot upon his fingers and cold upon his porridge.
Many authorities are cited to us in support of the proposition that a municipality is not required to restore the status quo or compensate for benefits received under a void contract where to do so would be tantamount to annulling the statute or doing by indirection that which the municipality was not permitted to do directly. While we do not doubt the propriety of such a rule, the rationale of our decision does not require us to discuss it, since the defendant could not have acquired anything under the Conner transaction which might be made the subject of such a dispute.
When a transaction is in direct violation of the Constitution and laws, it is not necessary to invoke fraud, or contravention of public policy, or any other indirection to establish its invalidity. The law does that. And it has the merit of applying itself analytically and impartially to the offending incidents in whatever relation they are found. We have referred to the invalidity of the attempted appointment of Conner to act as agent of the county in the series of transactions admittedly intended to evade the Constitution and create a county debt by indirection, and the inseparability from that purpose of the acts he was commissioned to perform. Article V, sec. 4, and Article VII, sec. 7, of the Constitution are addressed to the counties and municipalities as such, rather than to their officers, and deprive them of the capacity to contract *Page 449 
under the admitted conditions. There is no reason why the salutary rule applied to natural persons under such circumstances should not apply to a corporation or a municipality: Where the intended principal has no capacity to do the act if present, he is without power to appoint an agent for that purpose. Rest., Agency, sec. 20; 2 C.J.S., Agency, sec. 13, and citations. Since there has been no change in the fundamental law investing the defendant with power or capacity to do the act at this time, it cannot ratify or adopt the act purportedly done in its behalf. Rest., Agency, sec. 86; 2 Am. Jur., Agency, sec. 216; Norton v. Shelby County, 118 U.S. 425,30 L.Ed., 178, 190. Since the transaction under review was unambiguous in its character, in violation of constitutional provisions and in contravention of public policy, and would still be unlawful, it is incapable of ratification.
We reach the conclusion that the defendant acquired no interest in the Bradshaw property through the agency of Conner or by any contribution made to its purchase price, and the refusal of the court to reform the Bradshaw deed by substituting Guilford County as the grantee was proper. The refusal to make the further reformations and cancellation demanded in defendant's cross action was justified under the facts. The defendant having failed to secure the reformation of the deeds as pointed out in Ins. Co. v. GuilfordCounty, supra, the case reverts to the controlling principles there announced.
We note from the record that by resolution the County Commissioners have declared that the purchase of the property in controversy is a necessary governmental expense; and the same resolution discloses that the county has on hand a surplus fund legally available for that purpose. The judgment correctly declares that the restraining order in the case of Hill v.Stansbury, 224 N.C. 356, 30 S.E.2d 150, because of its exceptive provisions, does not apply to the present controversy, and would be no barrier to such action as the county desires to take in the premises. The judgment, which we are constrained to affirm, will not, therefore, of necessity put the county out of doors or cause it any grave inconvenience in the protection of its investment in property it took cum onere.
The judgment of the court below was in accord with applicable legal principles and justified by the facts found, and it is
Affirmed.
STACY, C.J., and WINBORNE, J., took no part in the consideration or decision of this case. *Page 450